UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| KAREN R. HESS, et al., | CASE NO. 07-CV-0049 W (CAB) |
|---|---|
| Plaintiffs, | **ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES (DOC. NO. 105.)** |
| vs. | |
| RAMONA UNIFIED SCHOOL DISTRICT, et al., | |
| Defendant. | |

On January 5, 2007, Plaintiffs Karen R. Hess, Michael A. Roberts, Seaneen A. Tenwolde, and John R. Tenwolde filed this lawsuit against Defendants Ramona Unified School District, Peter Schiff (in his official capacity as Superintendent of Schools), and David Osterman (in his individual and official capacity as Assistant Superintendent). Plaintiffs allege that Defendants failed to maintain equal facilities for girls' softball and boys' baseball in violation of numerous state and federal laws, including 20 U.S.C. §§1681 *et seq*, commonly known as Title IX.

On September 19, 2007, the Court ordered Defendants to construct a dedicated girls' softball field on the site of the boys' junior varsity/freshman baseball field. The Court ordered that the field be of the same quality and have the same amenities as the

boys' varsity baseball field. On April 10, 2008, the Court ordered the renovations to the new softball field be completed by April 22, 2008. Thereafter, the Court extended this deadline, eventually arriving on a final date of June 30, 2008.

On October 14, 2008, Plaintiffs filed the instant motion for attorneys' fees and expenses. (Doc. No. 105.) On November 3, 2008, Defendants filed their opposition. On November 10, 2008, Plaintiffs filed their reply, along with an unopposed ex parte application for leave from the applicable page limits. (Doc. No. 112.)

The Court decides the matter on the papers submitted and without oral argument. See S.D. Cal. Civ. R. 7.1(d)(1). The Court **GRANTS** Plaintiffs' unopposed ex parte application. (Doc. No. 112.) And for the reasons stated below, the Court **GRANTS** Plaintiffs' attorneys' fee motion (Doc. No. 105), and awards Plaintiffs **$297,300** in fees and **$27,647.11** in expenses.

## I.  BACKGROUND

The parties are well aware of the factual background, and thus it is not necessary to repeat it here. It is sufficient to note that the litigation arises from the District's 30-year practice of providing two on-campus baseball fields for the boys' varsity and junior varsity/freshman teams, while the girls' softball teams were routinely shuffled around various off-campus locations to practice and play their "home" games.

As a result of the District's practice, Plaintiffs filed this lawsuit and sought a preliminary injunction. On August 20, 2007, the Court granted the motion and ordered the parties, with the assistance of Magistrate Judge Cathy Ann Bencivengo, to make a good faith effort to agree upon the precise form of relief to be granted. Unable to agree, on September 13, 2007, Judge Bencivengo issued a Recommendation Regarding Implementation of Injunctive Relief ("Recommendation"), recommending that the District build a new dedicated softball field over the boys' JV/freshman baseball field, oriented in the same direction as the varsity baseball field.

The District objected to Judge Bencivengo's Recommendation, urging instead that it be allowed to construct a "new Girls' Softball field" on the current location of the JV/freshman baseball field, without changing the field's orientation. In addition to being able to complete the necessary renovations by the start of the 2008 season, the District argued that its proposal would reduce the fiscal impact, thereby allowing the District to continue with plans to construct additional new facilities, including a softball/soccer complex.

Based on the District's representations, on September 19, 2007, the Court ordered:

> By the start of the 2008 softball season, the District shall construct a dedicated girls' softball field on the current location of the boys' junior varsity/freshman baseball field. The field will be of the same quality and have all of the same amenities as the existing boys' varsity baseball field.

(Doc. No. 58.)

From December 2007 through approximately April 2008, Plaintiffs filed a number of ex parte applications charging Defendants with failing to comply with the order. Defendants opposed each of the applications. The issues were eventually resolved, and on April 28, 2008, the parties jointly moved to extend the deadline for completing the renovations to the softball field to June 30, 2008. On April 28, 2008, the Court granted the joint motion. On October 14, 2008, Plaintiffs filed the attorneys' fee motion.

## II. LEGAL STANDARD

Under 42 U.S.C. §1988, a court may award attorneys' fees to the prevailing party in an action brought to enforce constitutional rights or the provisions of Title IX. See 42 U.S.C. § 1988 ("In any action or proceeding to enforce a provision of . . . title IX of Public Law 92-318 . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ."). The appropriate fee award is determined by multiplying the number of hours reasonably worked on litigation by a reasonable hourly rate, arriving at a "lodestar." See Hensley v. Eckerhart, 461 U.S. 424,

433 (1983); McGrath v. County of Nevada, 67 F.3d 248, 252 (9th Cir. 1995). The court may then make adjustments to the lodestar figure, if necessary, to arrive at a reasonable fee. Blum v. Stenson, 465 U.S. 886, 888 (1984).

"The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." Gates v. Deukmejian, 987 F.2d 1392, 1397 (9th Cir. 1992) (citing Hensley, 461 U.S. at 433, 437). "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." Id. at 1397–98.

Furthermore, although the statute uses the terms "discretion" and "may," interpreting courts have looked to the legislative history and concluded that in the absence of special circumstances, a prevailing party should ordinarily recover reasonable attorney fees. See Toussaint v. McCarthy, 826 F.2d 901 (9th Cir. 1987).

### III. DISCUSSION

Plaintiffs claim that their attorneys expended 1,108.7 hours, including 12 hours of paralegal time, and request $28,057.49 in costs and expenses. (*Pl.'s Mot.* at 17, 25.) Plaintiffs further request that the Court apply a multiplier of 2.0 to compensate them for the difficulty, risk, and excellence of the results obtained. (*Id.* at 22-23.)

#### A. The Motion is Timely.

Defendants contend that Plaintiffs' motion is untimely. Under Federal Rule of Civil Procedure 54(d)(2)(B), attorneys' fee motions must be filed within fourteen days of entry of final judgment. Defendants argue that the final judgment in this case was the Court's April 28, 2008 order extending the deadline to June 30, 2008 for completing renovations to the softball field. Plaintiffs contend that no final order has been issued, and that the fee application is, therefore, timely. The Court agrees with Plaintiffs.

1    The April 28, 2008 order simply extended the deadline to complete the
2 renovations. The order was not a final judgment. Plaintiffs remained free to pursue
3 further relief after entry of that order. Therefore, there has not been a final judgment,
4 and Plaintiffs' motion is timely.

6    **B.    <u>Attorney Hourly Rates.</u>**

7    Three attorneys worked on this case for Plaintiffs. Leonard B. Simon worked 294
8 hours at a rate of $500 per hour. Elizabeth J. Arleo worked 741.5 hours at a rate of $350
9 per hour. Julie Kiehne-Lamkin worked 61.2 hours at $250 per hour. Plaintiffs also
10 request 12 hours of paralegal time charged at $125 per hour.

11    Plaintiffs argue that these hourly rates are reasonable and consistent with rates
12 charged by other counsel in the community. In support of this claim, they offer Peter
13 H. Benzian's declaration ("Benzian Decl.").

14    Mr. Benzian is a retired partner at Latham & Watkins LLP, and is generally
15 familiar with the billing rates of San Diego lawyers and law firms. (*Benzian Decl.*, ¶¶1,
16 3.) He believes that Mr. Simon, Ms. Arleo, and Ms. Kiehne-Lamkin's rates are
17 reasonable "given the complexities and circumstances of this case and the prevailing
18 hourly rates for attorneys of their stature and experience in San Diego." (*Id.*, ¶5.) Mr.
19 Benzian also opines that the number of hours expended by Mr. Simon, Ms. Arleo, and
20 Ms. Kiehne-Lamkin were reasonable given Defendants' "aggressive litigating posture"
21 and the circumstances of the case. (*Id.*, ¶¶5, 6.)

22    Defendants argue that Plaintiffs' attorneys' hourly rates are unreasonably high for
23 the San Diego area considering that the litigation was not complex, novel, and did not
24 require extraordinary skill or expertise. Defendants contend that Mr. Simon should only
25 be allowed $350 per hour because of his lack of experience with Title IX law.
26 Defendants also argue that Ms. Arleo and Ms. Kiehne-Lamkin's rates should be
27 significantly reduced, but they do not offer suggestions as to a more appropriate fee.
28

1  Defendants also do not support their contention that these rates are unreasonably high
2  with any evidence, such as competing declarations.
3       The Court finds that the hourly rates are reasonable.  Not only have Plaintiffs
4  provided the Court with a supporting declaration that confirms the reasonableness of
5  the rates, Defendants have failed to meet their burden of rebutting Plaintiffs' evidence.
6  Furthermore, based on the Court's knowledge of the San Diego market, the Court
7  believes the rates to be reasonable given the experience of the attorneys involved.  The
8  requested rates of $500 per hour for Mr. Simon, $350 per hour for Ms. Arleo, and $250
9  per hour for Ms. Kiehne-Lamkin are appropriate.  The paralegal rate of $125 per hour
10 is also appropriate.

      **C.    Recoverable Hours.**
13       Plaintiffs claim that their attorneys and paralegals spent 1,108.7 hours on this
14 litigation.  Plaintiffs contend that this is a reasonable number of hours given the facts
15 of the case, and argue that they are entitled to compensation for every hour worked
16 because they were met with vigorous opposition, yet obtained excellent results.
17 Defendants argue that these hours are excessive and duplicative, and that Plaintiffs
18 failed to adequately describe their time.

           **1.    The amount of time spent on the fee application was excessive.**
21       Time spent in preparing a fee application is compensable under 42 U.S.C. § 1988.
22 Clark v. City of Los Angeles, 803 F.2d 987, 992 (9th Cir. 1986).  However, when the
23 claimed time spent preparing the fee petition is excessive, the award may be reduced.
24 See Hensley, 461 U.S. at 434 (holding that hours not reasonably expended should be
25 excluded from fee award); see also Anderson v. Dir., Office of Workers Compensation
26 Programs, 91 F.3d 1322, 1325 (9th Cir. 1996) (stating that if an attorney spends
27 excessive time on the fee petition, his award may be reduced).

Plaintiffs' attorneys request 161 hours for preparing the fee application.  Of this amount, Mr. Simon expended 57 hours, Ms. Arleo 101 hours, and Ms. Kiehne-Lamkin 3 hours.  (*Pl.'s Mot.*, Ex. A at 5.)

The 161 hours is nearly 50 hours more than the total spent drafting the complaint, the preliminary injunction motion, and preparing for and attending the preliminary injunction hearing.[1]  And the amount spent on the fee application is only 7 hours shy of the total time spent on the reply to the preliminary injunction motion, which Plaintiffs characterize as "the most important brief filed in the case" because it addressed many factual and legal issues.  (*Pl.'s Reply*, at 3.)

Nor is the Court persuaded by Plaintiffs' attempts to justify the amount of time spent on the motion.  Defendants did not dispute that Plaintiffs prevailed in the case, and 42 U.S.C. § 1988 clearly allows attorneys' fees to prevailing parties.  Thus, the issues raised in the attorneys' fee motion are neither novel nor complex.

For these reasons, the Court finds that Mr. Simon and Ms. Arleo are only entitled to compensation for approximately 33% of the hours spent preparing the fee request. This reduction does not apply to Ms. Kiehne-Lamkin, who spent 3 hours on the application, which the Court finds reasonable.  Mr. Simon is therefore entitled to 19 hours of compensation, or $9,500.  Ms. Arleo is entitled to 34 hours worth of compensation, or $11,900.  Ms. Kiehne-Lamkin is entitled to 3 hours worth of compensation, or $750.

        **2.**      <u>**The attorneys are not entitled to time spent on media communications.**</u>

Time spent promoting and discussing a client's case with the local media may be compensable when it is directly connected to the success of the client's claims.  <u>Davis</u>

---

[1] Plaintiffs' attorneys spent 45 hours drafting the complaint, 70 hours drafting the preliminary injunction motion, and 40 hours preparing for and attending the preliminary injunction hearing, for a total of 115 hours.  (*Pl.'s Mot.* Ex. A at 1, 3.)

1 v. City and County of San Francisco, 976 F.2d 1536, 1545 (9th Cir. 1992) (holding that statutory fees may be awarded to civil rights attorneys for some time spent on media issues because "where the giving of press conferences and performance of other lobbying and public relations work is directly and intimately related to the successful representation of a client, private attorneys do such work and bill their clients."). However, attorney time spent dealing with the media that did not contribute "directly and substantially" to the plaintiff's case is not compensable.

Here, Ms. Arleo spent 22 hours responding to media contacts and facilitating media coverage of the case. Mr. Simon spent 1 hour on media issues. There is no evidence to suggest that this time contributed directly to Plaintiffs' success in this matter. Plaintiffs claim that they "believed that accurate and favorable press would make it more likely that RUSD's school board would fully and promptly comply with the law, or later with the injunction . . . ." (*Pl.'s Reply* at 9.) But Plaintiffs' filing of the preliminary injunction motion, as well as the numerous ex parte applications to enforce the injunction, demonstrate that the media coverage did not have the intended affect. Plaintiffs' attorneys are, therefore, not entitled to compensation for these hours and their award will be reduced accordingly.

### 3. **Plaintiffs' success in the litigation was not limited.**

Defendants argue that Plaintiffs' compensable hours should be reduced because they had partial or limited success on several of their motions. The Court disagrees.

A plaintiff's success is a "crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988." Hensley 461 U.S. at 440. Where the plaintiff has prevailed on only some claims for relief, the court must engage in a two step inquiry to determine the total fees for which plaintiffs are eligible. Id. First, the court must determine whether the successful and unsuccessful claims were unrelated. Dang v. Cross, 422 F.3d 800, 812-13 (9th Cir. 2005). Claims are unrelated if they are "distinctly different," both factually and legally. Id. at 813. If the claims are unrelated,

1  then the hours expended on the unsuccessful claims should not be included in the fee
2  award. Id.

3  If the claims are related, then the second step requires the court to evaluate the
4  significance of the overall relief obtained in relation to the hours reasonably expended
5  in litigation. Dang, 422 F.2d at 813. "Where a plaintiff has obtained excellent results,
6  his attorney should recover a fully compensatory fee." Id. (citing Hensley, 461 U.S. at
7  435). But if a party achieved only limited or partial success, a reasonable fee should only
8  compensate for some of the hours actually worked. Hensley, 461 U.S. at 435-36.

9  Here, Defendants' contend that because two of Plaintiffs' ex parte applications
10 were of limited or no success, Plaintiffs were only partially successful in the litigation.
11 But the ex parte applications were not "claims for relief" as that term is used in either
12 Hensley or Dang. Rather, the term refers to the claims giving rise to the litigation,
13 which are identified in the complaint. Thus, for example, in Dang, the Ninth Circuit
14 ordered the district court to determine–in the context of evaluating whether to reduce
15 an attorney-fee award–if the unsuccessful claims for false arrest, illegal entry, and
16 unreasonable search and seizure were related to plaintiff's successful excessive force
17 claim. Id. at 813.

18 Here, Plaintiffs' claim for relief was based on Defendants' discrimination in failing
19 to provide equal sports facilities. There is no dispute that Plaintiffs prevailed on this
20 claim. And Defendants have not identified any other claim for relief claim that
21 Plaintiffs lost.

22 Additionally, a comparison of the prayer for relief in the complaint and the results
23 obtained in the litigation confirms Plaintiffs' complete success. In the prayer, Plaintiffs
24 sought an order declaring that Defendants engaged in gender discrimination, and an
25 injunction restraining Defendants from continued discrimination and requiring
26 Defendants to provide a girls' softball field on or adjacent to the Ramona High School
27 campus. (*Compl.*, 14–15.) In prevailing on the preliminary injunction motion, Plaintiffs
28

obtained all of the relief requested. Accordingly, Defendants' contention that Plaintiffs had limited success lacks merit.[2]

### 4. The attorney and paralegal billing records are vague.

A district court may use it's authority to reduce requested hours that are poorly documented or described. Fischer v. SJB-P.D., Inc., 214 F.3d 1115, 1121 (9th Cir. 2000). The fee applicant bears the burden of documenting the hours spent on the litigation and must submit evidence to support his claim. Welch v. Metro. Life Ins. Co., 480 F.3d 942, 948 (9th Cir. 2007). When counsel lump together multiple tasks or fail to sufficiently describe the time expended, it is appropriate for the court to reduce the total hours. Id.

Defendants claim that Plaintiffs have failed to sufficiently describe and document their time. The Court agrees. Some of the hours are not adequately described and others are block–billed. Without a complete description of the hours worked, the Court is unable to determine if the requested amounts are reasonable.

#### a. *Mr. Simon's billing records:*

Following a detailed review of Mr. Simon's billing records, the Court finds that approximately 90% of his billing descriptions are block-billed, extremely vague, or generally non-descriptive. For instance, the description "Work on preliminary injunction brief" or "Work on preliminary injunction reply brief" accounts for 22.75 hours of Mr. Simon's time. The description "Prepare for hearing on preliminary injunction" describes 13.5 hours. Additional hours are described with phrases like

---

[2] Moreover, assuming that Plaintiffs' ex parte applications constitute "claims for relief," Plaintiffs are still entitled to compensation for the hours spent on the applications. The ex parte applications sought to enforce the preliminary injunction order, and thus were legally and factually related to Plaintiffs' success in the litigation. And because Plaintiffs obtained all of the relief requested in the complaint, the Court finds that Plaintiffs' attorneys achieved excellent results and are entitled to the fees expended on the ex parte applications.

"Work on complaint" (11.25 hours), "Finalize reply brief" (7.5 hours), "Work on letter brief to Magistrate" (6.25 hours), and "Further work on *ex parte*" (6 hours).

Without more detailed descriptions identifying exactly what Mr. Simon was doing during this time, the Court is unable to determine whether the time spent on these activities was reasonable. This is especially true considering that many of the descriptions in Ms. Arleo's billing records involve work on the same briefs and motions, indicating that duplicative billing may have occurred.

For these reasons, the Court will reduce Mr. Simon's vague hours by 33%. Because 90% of Mr. Simon's descriptions were vague, this results in an overall reduction of 29.7%. The total number of hours remaining after the fee-request reduction (38 hours) and the media reduction (1 hour) is 255 hours. After the 29.7% reduction in fees due to vagueness and block billing, Mr. Simon is entitled to 180 hours, or a lodestar fee award of $90,000.[3]

### b. *Ms. Arleo's billing records:*

Ms. Arleo's billing descriptions, while more complete and detailed than Mr. Simon's, are still sufficiently vague to warrant a reduction in her total fee award. Approximately 50% of Ms. Arleo's billing descriptions were vague. For example, "Plaintiff communication" appears nearly 100 times, with no further description. Without additional details, the Court is unable to determine whether the hours spent communicating with Plaintiffs were necessary and reasonable in this particular case. Ms. Arleo also described more than 24 hours with the phrase "Draft PI memo and supporting docs." While the Court acknowledges that 24 hours may have been reasonable considering the importance of the preliminary injunction to Plaintiffs' case, these descriptions are insufficiently detailed to allow the Court to determine whether the time spent was in fact reasonable.

---

[3] The 29.7% figure consists of 90% (% of vague hrs) x 33% (the reduction). The 180 hours is rounded up from 179.265 hours.

1    Furthermore, although Ms. Arleo does not engage in block billing to the extent
2 that Mr. Simon does, many of her hours are block billed or generically described.  For
3 instance, "Review time and draft EJA declaration" accounts for 13 hours of time.
4 "Research for reply" accounts for 8 hours, block billed in 4 hour increments.  Additional
5 hours are described as "Finalize memo" (6 hours), "Draft memo P's & A's for PI" (7
6 hours), and "Revise brief" (2 hours).

7    The Court finds these descriptions to be vague and inadequate, and will reduce
8 the vague hours by 33%.  Because 50% of Ms. Arleo's descriptions were vague, this
9 results in an overall reduction of 16.5%.  The total hours remaining after the fee-request
10 reduction (67 hours) and the media reduction (22 hours) is 652.5 hours.  After the
11 16.5% reduction due to vagueness and block billing, 545 hours remain, resulting in a
12 lodestar fee award of $190,750.[4]

### c.    *Ms. Kiehne-Lamkin's billing records:*

15    Following a review of Ms. Kiehne-Lamkin's billing records, the Court finds that
16 they are sufficiently descriptive to avoid a reduction for vagueness.  Ms. Kiehne-Lamkin
17 provided detailed descriptions of the time she spent on Plaintiffs' case and did not
18 engage in block billing.  The Court, therefore, finds that the 61.2 hours Ms. Kiehne-
19 Lamkin requested are reasonable and she should be awarded the entire amount of her
20 request, resulting in a lodestar award of $15,300.

### d.    *Paralegal billing records:*

23    The Court has also reviewed the paralegal billing records provided by Ms. Arleo.
24 Ms. Arleo claims that her paralegal spent 12 hours total working on this case.  The
25 records provided describe the time as follows:

26    1.0    Document organization and preparation

---

[4] The 16.5% figure consists of 50% (% of vague hrs) x 33% (the reduction). The 545 hours allowed is rounded up from 544.8375 hours.

   8.0 Review and organize documents
   3.0 Proofread letters to RUSD Board and defense counsel; Review complaint

   The 8 hour block of time billed for reviewing and organizing documents is extremely vague and unclear. The bill does not mention which documents the paralegal was organizing and reviewing, much less why this needed to be done or why it took her 8 hours. The Court finds that a 25% reduction in hours is appropriate. Ms. Arleo has billed 12 hours of paralegal time. Following the 25% reduction, she is entitled to 10 hours of paralegal time at $125 per hour, resulting in a lodestar fee award of $1,250.

### D. A Multiplier is not Appropriate.

   Under California and federal law, the court may use its discretion to increase an attorneys' fees award by granting a multiplier in especially risky, complex, and undesirable litigation in which the attorney has obtained good results. See Guam Soc'y of Obstetricians and Gynecologists v. Ada, 100 F.3d 691, 697 (9th Cir. 1996). Application of a multiplier is completely within the Court's discretion. Id.

   Here, the Court is not inclined to grant a multiplier, partially because it is aware of the financial constraints Defendants are subject to as a public school district in California. The Court is, therefore, not inclined to double the damages against the school district.

   Moreover, although counsel obtained excellent results, the Court finds that this litigation was not unusually complex or risky, nor was it undesirable. A multiplier is, therefore, not "necessary to the determination of a reasonable fee." Id. Plaintiffs' request for application of a 2.0 multiplier is **DENIED**.[5]

---

[5] Defendants request that the Court adjust Plaintiffs' attorneys' lodestar figure downward. In light of the reductions in section C.4. of this order to Mr. Simon's and Ms. Arleo's hours, the Court denies Defendants' request.

### E. Expenses & Costs.

Plaintiffs have requested reimbursement for $28,057.49 in expenses. Section 1988 permits reimbursement for reasonable expenses incurred in the course of litigation. United Steelworkers of America v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990). "Out-of-pocket expenses incurred by an attorney which would normally be charged to a fee paying client are recoverable as attorney's fees under section 1988." Chalmers v. City of Los Angeles, 796 F.2d 1205, 1216 n.7 (9th Cir. 1986).

The Court finds that Plaintiffs are entitled to reimbursement for most of their expenses. However, Plaintiffs have requested reimbursement for their own travel costs ($200.28 for mileage), parking costs ($38.00), and meals ($172.10). While many expenses, such as computer research, copying and filing fees, could normally be charged to a fee paying client, it is not customary to request reimbursement from a client for the *client's own* meals, parking fees, and travel costs. Accordingly, these costs are disallowed, resulting in a total reduction of $410.38. Plaintiffs are, therefore, entitled to $27,647.11 in expenses.

## IV. CONCLUSION & AWARD

The Court **GRANTS** Plaintiffs' unopposed ex parte application. (Doc. No. 112.) And for the reasons stated above, the Court **GRANTS** Plaintiffs' attorneys' fee motion (Doc. No. 105), and awards Plaintiffs **$297,300** in fees and **$27,647.11** in expenses.

**IT IS SO ORDERED.**

DATED: December 19, 2008

_____
Hon. Thomas J. Whelan
United States District Judge